### In re MARBLE CLIFF CROSSING APARTMENTS, LLC, Debtor.

#### No. 11–61545.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

March 14, 2013.

Adam J. Biehl, Matthew T. Schaeffer, Timothy A. Riedel, Yvette A. Cox, Bailey Cavalieri LLC, Columbus, OH, for Debtor.

## ORDER GRANTING THE DEBTOR'S FOURTH MOTION FOR AN EXTENSION OF THE EXCLUSIVITY PERIODS (DOC. NO. 501)

CHARLES M. CALDWELL, Bankruptcy Judge.

Marble Cliff Crossing Apartments, LLC ("Debtor") filed its Chapter 11 Petition for Relief on November 17, 2011. After the conclusion of the trial on confirmation of the Debtor's Second Amended Plan of Reorganization, the Debtor filed a fourth motion requesting extension of the exclusivity periods (Doc. No. 501). The Court set this matter for hearing on March 5, 2013. Based upon a review of the current status of this case and the statements of counsel, the Court finds and concludes that the Debtor established cause for an extension of the exclusive solicitation period through and including Wednesday, July 17, 2013. A brief history and the Court's ruling follow.

The United States Bankruptcy Code ("Code") provides that for a 120–day period after filing of the Chapter 11 petition, only debtors can file plans of reorganization. 11 U.S.C. § 1121(b). The Code allows extensions of the exclusivity period for plan solicitations upon request, but limits extensions to 18 months from the petition filing date. 11 U.S.C. § 1121(d)(2)(A). In this case, the Debtor received three

extensions of the exclusivity period, and the largest creditor, MTGLQ Investors, L.P. ("MTGLQ") opposed only the third extension. On November 30, 2012, the Debtor filed the current and fourth motion to extend the exclusivity period to the 18–month statutory plan solicitations limit (July 17, 2013), and MTGLQ again objected.

The Debtor argues that an extension is consistent with legislative history, the case is progressing timely towards reorganization, plan negotiations are ongoing, there will be no material prejudice to creditors, and the Debtor does not seek the extension to exert undue leverage in plan negotiations. On the other hand, MTGLQ argues that it should not be prohibited from submitting a plan, that there is no possibility of achieving a consensual plan, and continuing the exclusivity period will not move the case toward a fair and equitable resolution.

■ The exclusivity period provides debtors a fair opportunity to adjust and improve operations and restructure obligations free from creditor liquidation efforts. There is an inherent tension between the interests of debtors and unsecured creditors in preserving viable operations, compared to the interests of secured creditors in promptly liquidating the collateral and cutting their losses. For an apartment community, tenants are silent creditors but bear the greatest risk—the potential loss or deterioration of the quality of their homes.

■ The exclusivity period can be modified to promote fair and reasonable negotiations between debtors and creditors. *In re Energy Conversion Devices, Inc.,* 474 B.R. 503, 507–08 (Bankr. E.D.Mich.2012). The party seeking the extension of the exclusivity period bears the burden of demonstrating cause. 11 U.S.C. § 1121(d)(1). This inquiry requires the Court to examine a variety of factors, such as presence of good faith efforts to reorganize, timely payment of post-petition obligations, demonstration of reasonable prospects for presenting a viable plan, amount of time that has passed, and whether the exclusivity period is used to force creditors to accept a debtor's plan. *Energy Conversion Devices, Inc.,* 474 B.R. at 507–08.

■ This case has been pending since November 17, 2011, and the Debtor has received three extensions. On the other hand, the Debtor vigorously prosecuted a plan during a multi-day trial. The Court denied confirmation on February 11, 2013, but provided the Debtor a roadmap to achieve confirmation. In prompt response, the Debtor filed an amended plan on February 25, 2013. In the amendments the Debtor appears to address critical concerns the Court detailed when denying confirmation, such as irrevocable capital contributions, shortened plan repayment term, enhanced interest rate, reserve accounts, and post confirmation assurances regarding the performance and liability of management. Throughout the case the Debtor has made substantial adequate protection payments to MTGLQ, and has achieved near complete tenant occupancy enhanced by a waiting list.

In addition, on March 4, 2013, the Debtor filed a progress report for the methane gas remediation project, and during the March 5, 2013, hearing the Debtor presented testimony confirming the completion and detailing the initial operation of the remediation system and its preliminary efficacy. Further, the Debtor provided proof that it has been able to obtain renewed insurance coverage, even after the disclosure of the methane gas to the present insurer. These issues were paramount

concerns the Court expressed when it denied confirmation.

With reference to any prejudice to MTGLQ, the Court is keenly aware of its concern with the accrual of legal fees and expenses. This is an inevitable part of the Chapter 11 process, however, and cannot be the sole determining factor, especially where parties are actively prosecuting the case. The Court weighs this concern against the interests of the estate, all of its creditors, and the tenants in the successful emergence of the Debtor from Chapter 11. Surely, a sophisticated investor understands that the acquisition of a defaulted loan entails significant risks, including Chapter 11 and the requisite administrative costs. Any unanticipated complications, like methane gas, is a due diligence failure not a breakdown of the Chapter 11 process, that followed.

The interests of MTGLQ are further preserved by the related litigation over whether this case should be converted to Chapter 7 or dismissed with prejudice. Indeed, a trial on these matters has been set for March 26–27, 2013, along with the Debtor's request that this Court reconsider denial of confirmation based upon the recent plan amendments. Depending upon the outcome, the extension of the exclusive period may become moot. We are now in March 2013, and the July 17, 2013, extension date was selected in recognition of that fact, and the scheduling difficulties that inevitably arise for parties and the Court. The goal of the Court, however, is to have this Chapter 11 case concluded by confirmation, conversion or dismissal with prejudice, on an expedited basis.

Finally, regarding the prosecution of the recently amended plan, the Debtor and its ownership will be promptly required to provide substantial and detailed financial documentation and projections to support what is now being proposed. We will all

quickly know whether this is a wild goose chase as opined by MTGLQ, or rather the Debtor's belated sprint to the finish line.

For the above reasons, the Court **GRANTS** Debtor's Motion to Extend the Exclusivity Periods, and **EXTENDS** the exclusive solicitation period through and including Wednesday July 17, 2013.

**IT IS SO ORDERED.**